UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 23-186 (RC) |
| | : | |
| ANDRA PARKER, | : | Re Document No.:   52 |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION

DENYING DEFENDANT'S MOTION TO SUPPRESS

I.  INTRODUCTION

Defendant Andra Parker is charged with three counts of wire fraud and one count of first-degree fraud after allegedly embezzling funds from the Fraternal Order of Police's Department of Corrections Labor Committee.  Parker moves to suppress statements he made during federal agents' execution of a search warrant in 2019, as well as evidence obtained from his vehicle during that search.  The Court finds that the interview Parker agreed to was not custodial and thus denies his motion to suppress statements he made during that interview.  Because the Government does not plan to use evidence obtained from the vehicle at trial, the Court additionally denies as moot the motion to suppress that evidence.

II.  BACKGROUND AND FINDINGS OF FACT

On December 16, 2022, the Government filed a criminal complaint against Parker for wire fraud in violation of 18 U.S.C. § 1343.  *See* ECF No. 2.  A warrant was issued, and Parker was arrested on the following day.  A grand jury later returned a four-count indictment charging Parker with three counts of wire fraud, as well as one count of first-degree fraud in violation of

22 D.C. Code §§ 3221(a) and 3221(a)(1). *See* ECF No. 43. A trial on these charges is scheduled to commence on November 4, 2024.

The parties agree on many of the material facts, and the Court held an evidentiary hearing to shed light on the disputed points. The evidence demonstrates that in the early morning on May 9, 2019, nine law enforcement officers executed a search warrant at Parker's apartment. The FBI's operation plan included six FBI agents, two agents from the Department of Labor Office of Inspector General, and a Prince George's County Police officer. Gov't Ex. 1. A sign-in sheet for the scene shows that officers were at the location from 6:00 a.m. until 10:25 a.m. Def. Ex. 1. FBI Agent Michael Wagner testified that the officers had their weapons drawn when they knocked on Parker's door. Tr at 42.[1] When Parker answered the door, officers handcuffed him behind his back and briefly pulled him out of the apartment to conduct an initial sweep for officer safety. *Id.* at 8. The parties dispute whether the handcuffs were then removed, an issue the Court addresses below. Although the parties agree that weapons were drawn as is standard procedure for executing a search warrant, *see id.* at 42–43, 62, Parker recalls that the weapons were pointed at him, *id.* at 90–91. The agents do not recall whether or not weapons were pointed at Parker, *id.* at 41, but testified that the contemporaneous records from that day do not reveal that there would have been any reason to do so given that Parker was not belligerent or armed and was, instead, cooperative, *see id.* at 41, 84.

Parker then participated in an interview with two FBI agents in a room he used as a den. *Id.* at 93–94. Agent Wagner stated that the agents selected the room because it was searched for weapons and out of the way of the other agents. *Id.* at 15. The FBI Interview Report Form FD-

---

[1] The Court refers to the current rough draft of the hearing transcript, and the page numbers may shift slightly as the court reporter prepares a final version.

302 states that Parker was advised the interview was "completely voluntary." Gov't Ex. 3. Agent Wagner explained that these interviews usually take place when individuals ask the agents to explain why a search warrant is being executed, and the agents then ask if the individual would like to speak to the agents on a voluntary basis. Tr. at 20. The agents said that during this interview, they showed Parker various documents. *Id.* at 21. Parker recalled being shown a picture of a correctional officer. *Id.* at 94. The parties disagreed on the tone of this conversation. Agent Wagner asserted that it was "calm and controlled" given that FBI agents usually try to build rapport with interviewees, and that Parker was cooperative. *Id.* at 23. Parker instead described the conversation as "hostile," and claimed that the agents mocked him and told him he could be charged with obstruction of justice for giving false answers. *Id.* at 95–96. After the interview, the agents instructed Parker to sit on a couch in his apartment while the rest of the search was conducted. *Id.* at 76.

The primary disputed fact is whether Parker remained handcuffed after the agents' initial sweep of the apartment, including during the interview. *See* Def.'s Mot. Suppress at 2, ECF No. 52; Gov't's Opp'n Mot. Suppress at 2, ECF No. 54. Parker asserted that he remained handcuffed throughout the interview and the agents' search, other than briefly when he was allowed to visit the restroom. *Id.* at 93–94, 97. The Court does not find this plausible for the following reasons.

First, the testimony at the suppression hearing and the documentary evidence the Government presented demonstrated no reason why Parker would have needed to remain in handcuffs throughout execution of the search warrant. To be sure, the agents testified that they did not specifically recall whether Parker was handcuffed during the interview, *see id.* at 13–14, 70, which is reasonable given that this search occurred more than five years ago. The FBI FD-302 recounting the search, however, indicates that Parker was only "temporarily detained while

3

the residence was secured." Gov't Ex. 2. Agent Wagner credibly testified at the suppression hearing that this meant Parker was handcuffed only briefly. Tr. at 18–19. The fact that the agents both testified candidly that they could not specifically recollect whether Parker's handcuffs were removed *adds* to their credibility. The agents' belief that Parker was not handcuffed during the interview is also consistent with the agents' operation plan, which instructed that individuals encountered at the residence would be placed in handcuffs only until the residence was secured. *See* Gov't Ex. 1 at 4.

Agent Wagner credibly testified that an individual would remain in handcuffs only if he were combative, making threats, or if weapons were present at the scene. Tr. at 16. The agents testified that Parker was not combative and did not represent a threat to them during the search. *Id.* at 16, 23, 67, 73. Parker himself does not assert that he was threatening to the agents. The FBI FD-302s documenting the search and the interview additionally lack any indication that the agents would have needed to keep him in handcuffs. *See* Gov't Ex. 2; Gov't Ex. 3. FBI Agent Michael Biscardi credibly testified that it would be rather unusual for the agents to keep Parker handcuffed during the search, and that if there had been a reason to do so, that reason would be documented in the FD-302s. Tr. at 70. Agent Wagner also credibly testified that as a matter of practice, and particularly in his experience executing search warrants, handcuffs would have been removed after the initial sweep. *Id.* at 14.

The testimony and evidence regarding the interview itself also indicate that Parker was not handcuffed during that time. Agent Wagner credibly testified that he has no memory of ever interviewing any individual who was handcuffed behind his back during an interview conducted while executing a search warrant. *Id.* at 22. Agent Wagner also testified that the agents showed Parker various documents during this interview, which implies that Parker had the use of his

4

hands to review the documents. *Id.* at 79. The Court additionally finds relevant that Parker was able to sign a consent-to-search form that the agents credibly testified occurred at the end of the interview at a time Parker claims he was still handcuffed. *Id.* at 80, 98. The agents' testimony of when the document was singed is corroborated by the contemporaneous documentation. *See* Tr. at 21–22. Because all agree that Parker was handcuffed behind his back, and Agent Biscardi testified that agents are trained to always handcuff in the back, *id.* at 65, it is implausible that Parker could sign this form while handcuffed.

In sum, The Court finds that Parker failed to prove by a preponderance of the evidence that he was handcuffed after the agents' initial sweep of the apartment. The Court ascribes Parker's memory that he remained handcuffed throughout the encounter to the passage of more than five years since those events, the frenzied nature of execution of a search warrant at his apartment, and ongoing health concerns since that time documented in his filings. *See* Consent Mot. to Continue Plea Hearing, ECF No. 24; Unopposed Mot. to Continue Plea Hearing, ECF No. 27; Mot. to Continue Status Hearing, ECF No. 36.

### III.  LEGAL STANDARD

The Supreme Court has instructed that "a person questioned by law enforcement officers after being 'taken into custody . . . ' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *see also United States v. Vinton*, 594 F.3d 14, 26 (D.C. Cir. 2010) ("Miranda warnings are required 'where a suspect in custody is subjected to interrogation.'" (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). But a police "inquiry of persons not under restraint" does not trigger *Miranda* because

those individuals would not be in police "custody." *Miranda*, 384 U.S. at 477–78. Moreover, *Miranda* warnings are required only when the officers' questioning rises to the level of an "interrogation," such that "[a]ny statement given freely and voluntarily without any compelling influences" is admissible. *Id.* at 478. "The defendant bears the burden of proving both custody and interrogation by a preponderance of the evidence." *United States v. Richardson*, 36 F. Supp. 3d 120, 126 (D.D.C. 2014) (citing *United States v. Peterson*, 506 F. Supp. 2d 21, 23 (D.D.C. 2007)).

### IV.  ANALYSIS

Parker moves to suppress statements he made to FBI agents during the interview he gave while agents executed a search warrant at his residence on May 9, 2019. *See* Def.'s Mot. Suppress at 3–5. His motion also seeks to suppress evidence gathered from his vehicle during that search. *See id.* at 5–6. Because the Government does not intend to introduce at trial any evidence from Parker's vehicle, *see* Gov't's Opp'n Mot. Suppress at 1, the Court finds that issue to be moot. It is undisputed that the agents did not issue *Miranda* warnings to Parker before interviewing him. It is also undisputed that the questioning represented interrogation for the purposes of *Miranda*. At issue is whether the interrogation was custodial given that federal agents were executing a search warrant in his home at the time of the interaction.

The Circuit considered an interview during execution of a search warrant in *United States v. Cooper*, 949 F.3d 744 (D.C. Cir. 2020). The court observed that the question of "custody" turns on (1) "whether a reasonable person in the interviewee's position would feel at liberty to terminate the interrogation and leave," as well as (2) whether the "environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 748 (quoting *Howes v. Fields*, 565 U.S. 499, 508–09 (2012)). The court also noted that an

interview in a suspect's home usually weighs against a finding of custody like the police station interrogation in *Miranda*. *Id.* at 748. In *Cooper*, no weapons were brandished, and no handcuffs were used. *Id.* at 749. The interview was cordial, the interviewee never asked to end the interview, and the officers left without arresting her. *Id.* The court held that this interview was not custodial, and that "to hold otherwise would be akin to suggesting that voluntary statements uttered during the execution of a valid search warrant are inadmissible at trial absent the issuance of a Miranda warning." *Id.* at 749.

The Court also finds instructive *United States v. Silvers*, No. 21-cr-124, 2022 WL 3277373 (D.D.C. Aug. 11, 2022). In that case, the FBI executed a search warrant where the door was not breached, and officers holstered their weapons after a protective sweep. *Id.* at *2. After that sweep, the residents were allowed back into the house, at which point the agents asked the defendant whether he would like to interview. *Id.* The defendant then led the agents to a room away from his family and answered the agents' questions. *Id.* The court there held the interrogation to be non-custodial because the interview occurred in the defendant's home, the defendant was not handcuffed during the interview, weapons were not visible, and the defendant chose the location of the interview. *Id.* at *4–*5. The court also found the officers' execution of the search warrant to implicate a lesser show of force than other cases in this Circuit because the FBI did not employ a battering ram, a SWAT team, or heavier weapons like rifles and shotguns. *Id.* at *5.

Although there are some factual differences, the Court finds the facts of this case to be more similar to those in *Cooper* and *Silver* than to the cases cited by defendant in which the door was breached by officers as part of a more confrontational encounter. The evidence shows that the FBI agents knocked on the door rather than breaching and that Parker was handcuffed only

7

briefly. Parker was interviewed in the den of his two-bedroom apartment, *see* Tr. at 93, and the apartment therefore did not contain many suitable locations to conduct an interview. The Court has found that he was not handcuffed during the interview, and he does not suggest that he ever asked to end the interview. In addition, the interview of Parker was generally cordial instead of heated, and he was not arrested until two and a half years after the interview. Although Parker testified that an officer outside the apartment did not respond to his question whether he was under arrest, *see* Tr. at 91–92, the agents credibly testified that their standard practice would have been to advise Parker before the interview that he was not under arrest and was free to leave, *id.* at 14, 17. Again, the agents' inability to recollect these details after the passage of so much time is understandable and adds to their credibility. Parker's recollection of many aspects of that day is also lacking. In fact, he could not identify the agents who interviewed him. *See* Tr. at 92.

Courts in this Circuit have found similar interviews during execution of search warrants to be custodial only where law enforcement officers made significantly greater shows of force. The defendant in *United States v. Peterson* had been arrested just five days earlier, and a SWAT team used a battering ram to break into the apartment with rifles and shotguns drawn. 506 F. Supp. 2d 21, 24 (D.D.C. 2007). The defendant was found in his bedroom, handcuffed, and interviewed almost immediately after this breach. *Id.* In *United States v. Richardson*, officers similarly breached the door in the early morning and left the defendant handcuffed for 20 minutes while the officers conducted a search before interviewing him. 36 F. Supp. 3d 120, 130–31 (D.D.C. 2014). The interrogation in *United States v. Savoy* was similarly held custodial because sixteen FBI agents broke through the defendant's front and back doors at 6 a.m., handcuffed him, and had weapons visible during the interrogation. 889 F. Supp. 2d 78, 109–10 (D.D.C. 2012). The court also found the defendants to be in custody in *United States v. Segovia-*

*Melgar*, where—once again—the agents suddenly broke through the door in the early morning and arrested them soon after the interview.  595 F. Supp. 753, 754–55, 758 (D.D.C. 1984).

The Court does not find that Parker experienced a similar show of force during his May 9, 2019, encounter with the FBI agents.  Critically, the FBI agents here did not breach the door and force their way into the apartment.  Thus, even assuming that the agents directed Parker to remain in one place while they conducted the search, the Court does not find that the environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.  The Court instead finds that Parker spoke to Agent Wagner and Agent Biscardi voluntarily and in a non-custodial setting, such that *Miranda* warnings were unnecessary.  The Court therefore concludes that Parker failed to meet his burden of proof by a preponderance of the evidence and, thus, denies the motion to suppress statements Parker made during the interview.

## V.  CONCLUSION

For the foregoing reasons, Parker's Motion to Suppress is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  [Date]                                                                              RUDOLPH CONTRERAS
                                                                                                        United States District Judge